**KOOTENAI CANYON RANCH, INC., Plaintiff,**

v.

**UNITED STATES FOREST SERVICE, an Agency of the United States Department of Agriculture, and Dale Bosworth, Chief of the United States Forest Service, Defendants.**

No. CV 03–131–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Sept. 22, 2004.

Stacey Weldele–Wade, Antonioli and Wade, Missoula, MT, for Plaintiff.

Mark Steger Smith, Office of the U.S. Attorney, Billings, MT, for Defendant.

## ORDER

### I. INTRODUCTION

#### A. Procedural Background

This case involves a dispute over a right-of-way easement granted by Plaintiff's predecessor in interest to the U.S. Forest Service in 1965. The United States has moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). In so doing, it submitted declarations and other documents outside of the pleadings. In response, the Plaintiff also submitted affidavits, maps, photos and other documents. The United States then moved to strike certain paragraphs from two of Plaintiff's affidavits because they were not within the

personal knowledge of the affiant. In response, the Plaintiff argued that the Court should convert the government's motion into a motion for summary judgment, and simultaneously moved for a continuance of the summary judgment briefing so that it could conduct discovery.

■■ The government correctly argues that motions to dismiss under Rule 12(b)(1) are distinct from 12(b)(6) motions. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir.2001). The court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989).

■ While 12(b)(6) motions look only at the complaint, and are converted into summary judgment motions upon the filing of additional documents, a party making a 12(b)(1) motion may submit extra-pleading materials without converting the motion into one for summary judgment. *Assoc. of American Medical Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir.2000). Federal courts are courts of limited jurisdiction, and may rely on factual evidence to determine whether they have jurisdiction. *Id.; see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

I am therefore denying the Plaintiff's Motion for Rule 56(f) Continuance (Dkt. # 22). Similarly, I am denying the Government's Motion to Strike, as the offending paragraphs in the Plaintiff's declarations are not necessary to resolution of the underlying statute of limitations question.

## B.  Factual Background

The disputed easement is about 1130 feet long. Exhibit B, C, Motion to Dismiss. From its easternmost edge for the first 730 feet, it is 40 feet wide. It then begins flaring for the final 400 feet, gradually increasing in width to 208 feet at its western edge. *See* Exhibit E, Government Motion to Dismiss; Higgins Declaration, ¶ 5. The shape, then, is long and thin for the first two-thirds, with a triangular shape at the end—not unlike a trumpet with the end flared on only one half.

The right-of-way easement was granted to the United States by Magdoline Jellison, Plaintiff's predecessor in interest, and recorded on February 15, 1965. Exhibit B, Motion to Dismiss. The easement document states, "The said right-of-way is to be in conformity with and located upon the ground according to the survey line, the figures, measurements, widths, and other references shown on the plat hereto attached and made a part hereof." *Id.* at 1. The document provides that "if at any time this easement, or any road constructed thereon, shall be abandoned by the United States or its assigns, the rights and privileges hereby granted shall cease and terminate and the premises traversed thereby shall be freed from said easement as fully and completely as if this indenture had not been made." *Id.*

The long, thin portion of the easement is used for Kootenai Canyon Road. The Forest Service has maintained an animal loading ramp, parking area, hitching rail and bulletin board on some part of the triangular-shaped section of the easement since the early 1970s. Wilson Declaration, attached to Government Motion to Dismiss, ¶ 3. It also had an outhouse on the easement until 1983, at which time the Forest

Service took it down because of continual vandalism. *Id.* ¶ 4. The agency improved the facilities and the road in 1984. Exhibits J & K, Motion to Dismiss.

Plaintiff purchased the property in 1991. Hughes Declaration, attached to Plaintiff's Brief in Opposition, ¶ 6. It contends that it has allowed the Forest Service to maintain signs, hitching posts and a loading ramp at the end of the road, like its predecessors in interest. *Id.* ¶¶ 7–9, 11. However, it argues that this permissive use is outside the scope of the easement, and that it can withdraw permission at any time.

In May 2000, the Forest Service notified interested parties of its plans to improve the trailhead facilities at the Kootenai Creek trailhead, on the trumpet-shaped portion of the easement property. Exhibit M, Motion to Dismiss. The letter informed the reader that the agency intended to install a precast concrete outhouse; expand the parking area to better accommodate horse trailers; allow for more parking by leveling the south portion and improving the surface; improve the surface of the existing parking area; and install 250–600 feet of fence "to define public/private land." *Id.* According to Michael Wilson, Resource Assistant on the Stevensville Ranger District since 1980, "The improvements proposed are no different in kind than the improvements that have existed historically on the easement property." Wilson Decl. ¶ 4.

### C. Parties' Arguments

Plaintiff's primary argument is that the easement is for a road only, and that trailhead facilities are not permitted under the express terms of the easement. Plaintiff does not dispute that trailhead facilities— i.e., a hitching post, parking area, bulletin board, and animal loading ramp—have existed continuously at this site since at least the early 1970s. Nonetheless, it contends that the use of the property for these

facilities was permissive only, and that such use was not granted to the government by the right-of-way easement in 1965. Moreover, it contends that the United States has abandoned a "significant portion of the real property contained within the boundaries of the easement," and that the easement "relative to the abandoned property should cease and terminate" pursuant to the contract. Am. Complt. ¶ 27.

Plaintiff's Amended Complaint contains two claims for relief. The first is for a declaratory judgment that the Forest Service has abandoned part of the easement, and the second is that the Forest Service has no right to construct improvements on the easement property. Am. Complt. ¶¶ 28–35.

Defendant moved to dismiss the original complaint on three grounds. The first is that Plaintiff did not seek relief under the Quiet Title Act, 28 U.S.C. § 2409(a), which is the exclusive means by which claimants may challenge the United States' title to real property. *Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The second is that under the Quiet Title Act, Plaintiffs' claim is barred by the 12–year statute of limitations, which is jurisdictional. The final argument made by the government is that even if the easement document did not specify trailhead facilities as a contemplated use of the easement, the government's use of the area for the past 35 years has ripened into a prescriptive easement.

After the motion to dismiss was fully briefed, the Plaintiff amended its complaint with the government's consent. The primary amendment was the addition of a claim under the Quiet Title Act, thereby mooting the government's first argument for dismissal. The second argument remains, however, namely, whether the 12–year statute of limitations in the QTA di-

vests this Court of jurisdiction to hear the merits of this case. Because I find that it does, I am dismissing the case with prejudice.

## II. QUIET TITLE ACT

■ Prior to 1972, real property disputes could not be litigated against the United States unless the government initiated suit. *Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Congress waived sovereign immunity in the Quiet Title Act, allowing plaintiffs to bring suit against the government. 28 U.S.C. § 1346. However, the waiver is not unconditional; suits must be brought within 12 years of accrual. 28 U.S.C. § 2409a(f).

■ "[I]f the Quiet Title Act does not apply, the district court does not have jurisdiction." *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir.1999) (*Leisnoi I*). The initial prerequisites to jurisdiction are that (1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property. Those prerequisites are met here: the government has an easement in land for which the Plaintiff owns the servient estate, and the parties dispute the scope of that easement.

The QTA's statute of limitations provides: "Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409(g). This limitations period has been described as a "central condition of the consent [to be sued] given by the [Quiet Title] Act." *United States v. Mottaz*, 476 U.S. 834, 843, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986).

■ Moreover, the limitations period is jurisdictional. *Park County, Mont. v. United States*, 626 F.2d 718, 720 (9th Cir. 1980). "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block*, 461 U.S. at 287, 103 S.Ct. 1811.

■ The Court must determine whether and when the Plaintiff or its predecessors in interest knew or should have known of the United States' belief that its easement allowed it to construct and maintain trailhead improvements. The test is one of reasonableness. *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985). "The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Shultz v. Department of Army, U.S.*, 886 F.2d 1157, 1160 (9th Cir.1989).

■ Here, the issue is not the government's mere claiming of an interest, but the scope of the interest claimed. Moreover, for purposes of the statute of limitations, it is irrelevant whether the government's use was prescriptive or permissive. Plaintiff filed suit on August 14, 2003. If the Plaintiff knew the government was using the easement for more than a road, i.e., for trailhead facilities, and if that knowledge predates August 14, 1991, the QTA statute of limitations bars the Court from inquiring further into the merits of the action.

Plaintiff's immediate predecessor, Ruth Hughes, bought the Kootenai Canyon Ranch in 1991. Hughes Decl. ¶ 1. She has been aware since the time she bought the property of the Forest Service's easement, and its unique shape. *Id.* ¶ 4. She has also been aware of the hitching post, loading ramp, and signs posted by the Forest Service, and believes the use has been ongoing since the early 1970s. *Id.* ¶ 8–11.

Although the record does not reflect the exact month Ruth Hughes purchased the property, it was purchased in 1991. Nonetheless, the facts are undisputed that the Forest Service installed and maintained a hitching post, animal loading ramp, bulletin board, signs, and for a period of time, an outhouse, on this easement in the early 1970s. Importantly, all of the trailhead facilities are on property covered by the easement; had the government placed improvements on land outside of the easement, the inquiry would be different.

Plaintiff argues that the easement provided only for a road, and that the government's use of the property for trailhead facilities exceeded the scope of the easement; however, even if that argument is correct, a reasonable landowner would have been on notice for the past 30 years of the expansive use of the easement. Thus, because Plaintiff or its predecessors had notice long before August 1991, the QTA statute of imitations divests this Court of jurisdiction, and Plaintiff's claim that the easement does not allow for such facilities must be dismissed.

## III. ABANDONMENT

■ Plaintiff's claim that the Forest Service has abandoned a small portion of the easement is cognizable only if the easement can be severed into small chunks, each of which has to be "used" in order to avoid the inference of abandonment. Otherwise, the Plaintiff's claim that the Forest Service has abandoned part of the easement is subject to the same limitations analysis as above, and must be dismissed.

In *State of North Dakota ex rel. Board of University & School Lands v. Block,* 789 F.2d 1308 (8th Cir.1986) (on remand from the U.S. Supreme Court's decision in *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811 (1983)), the Eighth Circuit interpreted the Ninth Circuit's decision in *Park County* as "persuasive authority for

rejecting the tract-by-tract approach." *Id.* at 1312 (citing *Park County,* 626 F.2d at 721 n. 6). Moreover, the court noted that the "state has advanced no logical argument why the United States would lay claim to some of its riparian riverbed rights and not to the remainder thereof." *Id.* Similarly, the Plaintiff has advanced no logical argument why the Forest Service would lay claim to some of the easement, but not all of it—especially in light of the fact that the disputed activities are taking place on part of the easement property.

In *Park County,* the county argued that it had notice only of the government's claim to the trail directly behind a sign and rock barrier, not of its claim to other unsigned lands. The Ninth Circuit held that placement of the sign put the county on inquiry notice, and "alerted them to make reasonable inquiry as to the remainder of the purported right-of-way since the remainder would have little or no remaining utility if it were severed." 626 F.2d at 721 n. 6.

The same rationale applies here. The Forest Service is the holder of an express easement for a specific piece of property. It has used and maintained the property over the years for both a road and a trailhead facility. To hold that it is required to use very inch of the easement or risk being found to have abandoned it requires too much.

Because the easement can be abandoned only in its entirety, not as to small portions, Plaintiff's abandonment argument must apply to the entire parcel. As already discussed, Plaintiff has been aware of the government's consistent use of the easement for more than 30 years. I therefore find that Plaintiff's claim of abandonment is barred by the 12–year statute of limitations under the Quiet Title Act.

## IV. CONCLUSION

Plaintiff's predecessors have been on notice since the early 1970s that the Forest Service was using its easement for trailhead facilities as well as for a road. Because the Quiet Title Act's 12–year statute of limitations is jurisdictional, this Court does not have jurisdiction to hear Plaintiff's claim that the Forest Service has impermissibly expanded the scope of its easement, or abandoned its easement.

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED (Dkt. # 10). For the reasons stated earlier, Defendant's Motion to Strike is DENIED (Dkt. # 20), and Plaintiff's Rule 56(f) Motion for Continuance is DENIED (Dkt. # 22).